■ In the Matter of JAMES W. EICH, Petitioner, v GAIL S. SHAFFER, as Secretary of State of the State of New York, Respondent.—Proceeding pursuant to CPLR article 78 to review a determination of the respondent Secretary of State dated March 19, 1986, which, after a hearing, found that the petitioner had demonstrated untrustworthiness within the

meaning of Real Property Law § 441-c, and revoked the petitioner's real estate broker's license.

Adjudged that the determination is confirmed and the petition is dismissed on the merits, with costs.

We find that the Secretary of State's determination that the petitioner had demonstrated untrustworthiness within the meaning of Real Property Law § 441-c is supported by substantial evidence on this record (see, CPLR 7803 [4]). The transcript of a hearing and determination dated August 22, 1980, by the New York State Department of Insurance revoking the petitioner's insurance broker's licenses was in evidence at the instant hearing, as was the petitioner's renewal application for a real estate broker's license for the period 1981 to 1983. The August 22, 1980 determination by the Department of Insurance found that the petitioner had failed to satisfy a judgment for collected but unremitted insurance premiums, failed to remit premiums and issued a check for collected premiums later dishonored and not made good, and determined that he had "demonstrated his incompetency and/ or untrustworthiness to act as an insurance agent and broker". As a result, the Department of Insurance revoked the petitioner's license as an insurance broker.

On the petitioner's application to renew his real estate broker's license, which was prepared by the petitioner after his insurance license had been revoked, he answered the question "Has any license been denied, suspended, or revoked by this state * * * since the filing of your last application?" in the negative.

The Secretary of State should not consider evidence of untrustworthiness where the general public would not be adversely affected (Matter of Stowell v Cuomo, 52 NY2d 208). However, here, the petitioner's misdeeds as a licensed insurance broker involved his acceptance of premium payments from policyholders which were properly to be remitted to three separate insurance carriers in an amount totaling more than $20,000. The improper handling of money entrusted to the petitioner is as much a factor in judging his fitness to act as a real estate broker as it is in evaluating his fitness as an insurance broker (see, Matter of Gold v Lomenzo, 29 NY2d 468, 477). It was therefore proper for the Secretary of State to base her determination that the petitioner was untrustworthy to act as a real estate broker within the meaning of Real Property Law § 441-c on his misdeeds as an insurance broker (see, Blackmore v Shaffer, 128 AD2d 494; Matter of Smith v

*Paterson,* 88 AD2d 917; *Matter of Dovale v Paterson,* 85 AD2d 602).

We reject the petitioner's claim of laches and collateral estoppel. Although several years passed between the determination to revoke the petitioner's insurance broker's licenses and the start of the instant proceedings, the petitioner remained a licensed real estate broker in the interim, and thus did not suffer prejudice. It is possible that the petitioner's false statement on his 1981-1983 real estate license renewal application may have added to the delay *(see, Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88).

The imposition of the penalty of license revocation is not so disproportionate to the offenses as to be shocking to one's sense of fairness *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222; *Matter of Dovale v Paterson, supra).*

We have considered the petitioner's remaining contentions and find them to be without merit. Thompson, J. P., Rubin, Eiber and Sullivan, JJ., concur.