Matter of Malul v New York Dept. of State (2025 NY Slip Op 06110)

Matter of Malul v New York Dept. of State

2025 NY Slip Op 06110

Decided on November 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 6, 2025

CV-24-1010
[*1]In the Matter of Amnon M. Malul, Petitioner,
v
New York Department of State et al., Respondents.

Calendar Date:September 5, 2025

Before:Pritzker, J.P., Reynolds Fitzgerald, Lynch, Fisher and Mackey, JJ.

Cullen and Dykman LLP, Albany (Christopher E. Buckey of counsel), for petitioner.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondents.

Mackey, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Special Deputy Secretary of State revoking, among other things, petitioner's associate real estate broker's license.
Petitioner was charged by respondent Department of State with engaging in fraud and fraudulent practices, and demonstrating untrustworthiness and incompetency within the meaning of Real Property Law § 441-c, because of his failure to supervise two licensed real estate salespersons, Alexander Malakov and Eldad Amrani, who were associated with Wyckoff Realty LLC in 2018. By way of background, petitioner was licensed as an associate real estate broker and as a limited liability company real estate broker during that period, and those licenses entitled him to engage in real estate transactions such as the sale and rental of real estate (see Real Property Law § 440 [1], [2]). Licensed real estate salespersons, in contrast to brokers, must be "associated with a licensed real estate broker" to engage in those transactions and can only do so on behalf of, and under the supervision of, that broker (Real Property Law § 440 [3]; see Real Property Law § 441 [1]; 19 NYCRR 175.21 [a]).
With that in mind, petitioner does not dispute the following facts. Respondent Department of State Division of Licensing Services (hereinafter DLS) commenced an investigation into the circumstances surrounding the leasing of a property in Queens to six college students in June 2018. The investigation revealed that Malakov had advertised the property for rental online, claiming to be associated with a brokerage named Step 1 Properties. The students' real estate salesperson successfully negotiated a lease deal with Malakov and collected a commission for his efforts. When the students' salesperson sought to pay the agreed-upon share of that commission to Malakov's broker, Malakov refused to provide any information about Step 1 Properties and demanded that the money be paid directly to him. The students' salesperson, not wanting to blow up the deal, complied. Investigators learned that Malakov was related to the owner of the property, was doing work involving the property that required a broker's license, and that neither Malakov nor Step 1 Properties were licensed real estate brokers. Petitioner, the broker representing Wyckoff, told investigators that he "had no knowledge of any personnel hiring or working in the office" because Amrani was solely responsible for the day-to-day operations there. Petitioner acknowledged, in fact, that he had never even met Malakov. Meanwhile, Amrani told investigators that Malakov had only "parked" his license as a real estate salesperson with Wyckoff and had done no real estate work there during the relevant period.
Petitioner, Malakov, Amrani and others were charged by DLS with misconduct as a result of the investigation. Petitioner failed to appear at the ensuing hearing. The [*2]Administrative Law Judge (hereinafter ALJ) thereafter issued a decision in which he found, among other things, that Malakov had violated his obligations under the Real Property Law in numerous respects and that revocation of his real estate salesperson's license was warranted. The ALJ further found that, although petitioner did not personally "engage[ ] in any fraudulent acts," his failure to supervise Malakov and Amrani as required constituted untrustworthiness or incompetency, which violated Real Property Law § 441-c (1). The ALJ accordingly revoked petitioner's limited liability company broker's license but, for reasons that went unexplained, took no action against his associate real estate broker's license.
DLS appealed and argued that both of petitioner's licenses should have been revoked given the serious nature of his misconduct. The Special Deputy Secretary of State thereafter issued a determination in which he adopted the factual findings of the ALJ and added that, while petitioner's conduct reflected untrustworthiness and incompetency, it also constituted fraud because it enabled Malakov and Amrani to avail themselves of his status as a licensed broker to engage in unlicensed real estate activity. The Deputy Secretary further found that, given the serious nature of petitioner's misconduct, both of the broker's licenses he held should be revoked. Petitioner commenced this CPLR article 78 proceeding to challenge the Deputy Secretary's determination, and the matter was transferred to this Court for resolution (see CPLR 7804 [g]).
We confirm. "Where it is made following an evidentiary hearing, 'an administrative determination will be upheld if supported by substantial evidence in the record as a whole, even if the record also contains evidence that would support a contrary conclusion' " (Matter of ExceedLLC, LLC v Department of State Div. of Licensing Servs., 233 AD3d 1392, 1394 [3d Dept 2024] [citation omitted], quoting Matter of Cornell Assoc. Realty v Shaffer, 210 AD2d 537, 539 [3d Dept 1994], appeal dismissed & lv denied 85 NY2d 1021 [1995]). Petitioner primarily argues that the determination is not supported by substantial evidence in that the established facts did not demonstrate that he actually knew of Malakov's improper conduct or that he had committed fraud. Although we do not agree with respondents that petitioner waived those arguments by failing to appear at the administrative hearing (see Matter of Reid v Venettozzi, 224 AD3d 1037, 1038 n 1 [3d Dept 2024]), we are satisfied that they fail on the merits.
As for the question of petitioner's knowledge of misconduct, he is correct that a broker's license cannot be revoked for any "violation of a provision of [the Real Property Law] by a real estate salesperson . . . unless it shall appear that the broker had actual knowledge of such violation or retains the benefits, profits or proceeds of a transaction" arising out of it (Real Property Law § 442-c; see Matter of Roberts Real Estate [*3]v New York State Dept. of State, Div. of Licensing Servs., 80 NY2d 116, 122 [1992]). Petitioner, however, was not disciplined for the misconduct of Malakov but for what the undisputed proof showed was his own lack of involvement in the day-to-day operations of Wyckoff and his wholesale failure to supervise Malakov and Amrani. Substantial evidence therefore supports the finding that petitioner had exhibited "untrustworthiness and incompetency [as a broker] and fail[ed] to meet [his] duty to supervise sales personnel" (Matter of Roberts Real Estate v New York State Dept. of State, Div. of Licensing Servs., 171 AD2d 217, 221 [3d Dept 1991], mod 80 NY2d 116 [1992]; see Real Property Law § 441-c [1] [a]; 19 NYCRR 175.21 [a]).
As for the issue of fraud, Real Property Law § 441-c (1) (a) authorizes disciplinary action against the holder of a real estate broker or real estate salesperson license if he or she has engaged in "fraud or fraudulent practices," which in the regulatory context goes beyond the traditional understanding of intentional fraud to "include those acts which may be characterized as dishonest and misleading" (Matter of Allstate Ins. Co. v Foschio, 93 AD2d 328, 331 [2d Dept 1983]; see e.g. People v Federated Radio Corp., 244 NY 33, 38-39 [1926]). As the Deputy Secretary determined, petitioner's failure to supervise Malakov and Amrani as required was itself dishonest and misleading because it enabled them to engage in "the deliberate, unlicensed practice of regulated, real estate activity . . . by misrepresenting either directly or indirectly that" they were either brokers themselves or were being adequately supervised by one (Matter of Division of Licensing Servs. v Flagship Marketing Group Inc., 7 DOS 00 [Feb. 2, 2000], available at https://
docs.dos.ny.gov/ooah/decisions/non_indexed/FLAGSHIP.htm [last accessed Sept. 17, 2025]). Substantial evidence therefore also supports the determination that petitioner had engaged in fraudulent practices forbidden by Real Property Law § 441-c (see Matter of Solk v Department of State of State of N.Y., 286 App Div 178, 179-180 [1st Dept 1955]).
Finally, notwithstanding petitioner's argument otherwise, we cannot say that the revocation of his license to act as an associate broker as well as his license to act as a limited liability company broker was so disproportionate to his misconduct as to shock the judicial conscience (see Matter of Butterly & Green v Lomenzo, 36 NY2d 250, 256 [1975]; Matter of Shane v New York State Dept. of State Div. of Licensing Servs., 135 AD3d 866, 867 [2d Dept 2016]). Petitioner's remaining contentions, to the extent that they are properly before us, have been examined and found to lack merit.
Pritzker, J.P., Reynolds Fitzgerald, Lynch and Fisher, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.